IN THE UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

USCA Case No. 14-13048-E
United States District Court, Middle District of Florida
Case No.: 3:13-cv-01287-HES-JBT

ELI LILLY AND COMPANY AND LILLY USA, LLC

Appellants,

v.

LESLIE PINCIARO DUDLEY,

Appellee.

_____

**On Appeal from Order Granting Remand (CAFA) in the United States
District Court, Middle District of Florida**

_____

ANSWER BRIEF OF APPELLEE, LESLIE PINCIARO DUDLEY

_____

Brian William Warwick, Esq.
Janet R. Varnell, Esq.
Varnell & Warwick P.A.
P.O. Box 1870
Lady Lake, FL  32158
Telephone: (352) 753-8600
Facsimile:  (352) 504-3301
bwarwick@varnellandwarwick.com
jvarnell@varnellandwarwick.com


ATTORNEYS FOR APPELLEES

{}

USCA Case No. 14-13048-E
United States District Court, Middle District of Florida
Case No.: 3:13-cv-01287-HES-JBT

Eli Lilly and Company, et al. v Dudley

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE

Pursuant to F.R.A.P. 26.1 and 11th Cir. R. 26.1-1, Appellee Leslie Pinciaro Dudley, by and through her undersigned counsel, hereby discloses the following trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock:

1.    Boshkoff, Ellen E. (Attorney for Defendants);

2.    Brooks, Stephen M. (Attorney for Defendants/Appellants);

3.    Buchanan Ingersoll & Rooney PC/Fowler White Boggs, P.A. (Attorney for Defendants/Appellants);

3.    Carroll, Thomas W. (Attorney for Defendants/Appellants);

4.    Dudley, Leslie Pinciaro (Plaintiff/Appellee);

5.    Eli Lilly and Company and Lilly USA, LLC (LLY) (Defendants/Appellants);

C-1

USCA Case No. 14-13048-E
United States District Court, Middle District of Florida
Case No.: 3:13-cv-01287-HES-JBT

Eli Lilly and Company, et al. v Dudley

6.      Faegre Baker Daniels LLP (Attorneys for Defendants);

7.      Flower White Boggs P.A. (Prior Attorneys for Defendants);

8.      Holshouser, Eric J. (Attorney for Defendants/Appellants);

9.      Nelson Mullins Riley & Scarborough LLP (Attorneys for

Defendants/Appellants);

10.     Pope, D. Lucetta (Attorney for Defendants/Appellants);

11.     Schlesinger, Harvey E. (U.S. District Judge);

12.     Scott, William J. (Attorney for Plaintiff);

13.     Simmons Jr., Steven T. (Attorney for Plaintiff);

14.     The Law Offices of William J. Scott (Attorney for Plaintiff);

15.     Varnell, Janet R. (Attorney for Plaintiff/Appellee);

16.     Varnell & Warwick, P.A. (Attorneys for Plaintiff/Appellee);

15.     Warwick, Brian W. (Attorney for Plaintiff/Appellee)

C-2

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiff/Appellee does not need time for oral argument as this case hinges on well-established Eleventh Circuit case law.    Therefore, Plaintiff/Appellee respectfully requests that this decision be made on the pleadings and record as submitted.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE............................................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................... i

TABLE OF CONTENTS.......................................................................... ii

TABLE OF CITATIONS ........................................................................ iv

STATEMENT OF ISSUES ......................................................................1

STATEMENT OF THE CASE...................................................................1

SUMMARY OF ARGUMENT ..................................................................6

ARGUMENT ....................................................................................8

I.    LILLY FAILED TO ESTABLISH BY A PREPONDERANCE OF THE EVIDENCE THAT THE AMOUNT IN CONTROVERSY EXCEEDS THE JURISDICTIONAL MINIMUM..................................................................10

    A.    The Trial Court Correctly Ordered Remand Because Lilly's Class-Size Evidence Is Speculative And Fails To Include The Number Of FDEs Who Fall Within The Definition Of The Proposed Class .....................11

    B.    The Trial Court Correctly Ordered Remand Because The Amount Of Damages Proffered By Lilly Is Speculative ..........................................19

ii

1.  Lilly's Attempt to Extrapolate the Value of the Reward
    Recognition Trip Among all FDEs was Improper.........................19

2.  Lilly's Speculative Valuations Regarding Incentive Payment
    Damages is Insufficient to Support CAFA Jurisdiction ...............22

II.   THE   TRIAL   COURT'S   RATIONALE   DOES   NOT   REQUIRE
      DEFENDANTS  TO  CONCEDE  LIABILITY  OR  CALCULATE  THE
      EXACT AMOUNT OF CONTROVERSY....................................................25

CONCLUSION .................................................................................................29

CERTIFICATE OF COMPLIANCE .......................................................................30

CERTIFICATE OF SERVICE ...............................................................................31

# TABLE OF CITATIONS

**Cases**

Bartnikowski v. NVR, Inc., 307 Fed. Appx. 730, 738 (4th Cir. 2009) ...... 21, 27, 28

Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994) ......................8, 23

Caufield v. EMC Mortgage Corp., 803 F. Supp. 2d 519 (S.D. W.V. 2011) .... 15, 16

Evans v. Walter Indus., Inc., 449 F.3d 1159, 1164 (11th Cir. 2006) .......................9

Hewitt v. Gerber Products Co., 2012 WL 5410753, *8 (W.D. Ark. 2012) 15, 16, 17

Krivonyak v. Fifth Third Bank, 2009 WL 2392092, *5 (S.D. W.V. 2009) ............15

Miedema v. Maytage Corp., 450 F. 3d 1322, 1328-30 (11th Cir. 2006)......... passim

Myers v. BJ's Wholesale Club, Inc., 2014 WL 1923277, *3 (E.D. Pa. May 14, 2014) ..................................................................................................................16

Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 751 (11th Cir. 2010) ........ passim

Raskas v. Johnson & Johnson, 719 F.3d 884 (8th Cir. 2013) ................................27

Std. Fire Ins. Co. v. Knowles, 133 S.Ct. 1345, 1348, 185 L.Ed.2d 439 (2013) ..........
.................................................................................................. 6, 11, 18

**Statutes**

28 U.S.C. § 1332(d)(1)(D) .....................................................................................26

**Rules**

11th Cir. R. 26.1-1 ...................................................................................................1

Federal Rule of Appellate Procedure 26.1 ...............................................................1

## STATEMENT OF ISSUES

1. Whether Appellants must bear the burden of establishing the $5 million amount in controversy by a preponderance of the evidence for CAFA jurisdiction purposes?

2. Whether Appellants can speculate regarding the number of class members and the amount of damages in establishing CAFA jurisdiction?

## STATEMENT OF THE CASE

Appellant Eli Lilly ("Appellant" or "Lilly") promised all of its fixed duration employees ("FDE") certain incentive and reward payments under the terms of their employment contract. However, Lilly refused to pay some, but not all, of those FDEs the incentive and reward payments.

Leslie Pinciaro Dudley ("Appellee" or "Dudley") is a former sales representative who worked for Lilly as a FDE. (Doc 2 – Pg 4). FDEs differed from a full-time employee ("FTE") only by dent of the fact that the FDEs had a termination date specified in their employment agreement. (Doc 2 – Pg 4). Lilly FDEs and FTEs receive similar, if not identical benefits. (Doc 2 – Pg 4).

While at Lilly, Dudley was compensated with a base annual salary, as well as three additional sales incentives which were paid to Dudley annually or bi-annually. (Doc 2 – Pgs 4-5). In addition to the regular sales incentives, Dudley

1

was awarded a "Reward Recognition Trip" or "RRT" (valued at $5,000.00), based on her individual performance. (Doc 2 – Pg 5). To entice its FDEs to continue achieving high performance goals, Lilly told Dudley and all other FDEs that all incentives would be paid throughout their contract term. (Doc 2 – Pg 5). However, after Dudley's employment with Lilly expired, Dudley was notified by Lilly that she would not receive her incentives or Reward Recognition Trip despite achieving eligibility for these benefits prior to termination. (Doc 2 – Pgs 5-6).

On September 13, 2013, Dudley filed a Class Action Complaint against Lilly in the Circuit Court of Duval County, Florida, for four separate causes of action: (1) breach of employment contract, (2) quantum meruit, (3) unjust enrichment, and (4) promissory estoppel (individual claim). (Doc 2). On October 23, 2013, Lilly filed a Notice of Removal, alleging that the Federal Courts have jurisdiction over this matter under the Class Action Fairness Act ("CAFA") because the "amount in controversy exceeds $5,000,000 exclusive of interests and costs." (Doc 1 – ¶ 4).

In support of its amount in controversy calculation, Lilly relied solely on the affidavit of James R. Harenberg (the "Harenberg Affidavit"), a corporate representative of Lilly. (Doc 1-2). Mr. Harenberg stated there were a **total** of 1,181 FDE's that were employed by Lilly since January 1, 2008. (Doc 1-2 – ¶ 6). Accordingly, Lilly multiplied the number of **total** FDEs (1,181) by $9,600, the amount of **individual damages alleged by Plaintiff** ($4,600 in pro-rated

2

incentives and the $5,000 value of the Reward Recognition Trip), to equal $11,337,600.  (Doc 1 – Pg 5).  The affidavit did not contain any evidence suggesting that all FDEs were members of the putative class.  In fact, it did not contain any evidence that there are any other members of the putative class.  Neither did Lilly provide any evidence that the amount in controversy for the named plaintiff would be an average amount that could be anticipated to apply to any other member of the putative class.

Dudley moved to remand the case to state court on the grounds that Lilly failed to meet its burden of proving by a preponderance of the evidence that the amount in controversy exceeds $5,000,000.00 because Lilly's calculations were based on speculative assumptions on the number of class members and the amount of damages.  (Doc 13).  Lilly filed its Response to that Motion and attached a "supplemental" affidavit from Mr. Harenberg (the "Harenberg Supplemental Affidavit").  (Doc 16-2).  For the first time, Lilly conceded that only a portion of the 1,181 FDE employees identified in its Notice of Removal could be members of the Class set forth in the Plaintiff's Complaint.  (See Doc 16 – Pg 14).  For example, Mr. Harenberg states that 210 of the previously identified 1,181 FDEs were still employed by Lilly, and therefore not part of the Class.  (Doc 16-2 – ¶ 6).  In addition, Mr. Harenberg states that an additional 122 FDEs ended employment on a dual payout period, which would mean they would also not meet the class

3

definition.  (Doc 16-2 – ¶ 8).  However, Lilly  presented no evidence to the district court as to how many of the remaining individuals identified by Mr. Harenberg's Supplemental Affidavit fit the Complaint's class definition, which only includes those FDEs that <u>did not receive</u> their incentive compensation as a result of their termination end date.  <u>See</u> (Doc 2 – ¶ 36).  Those FDEs that were paid their incentives are simply not part of the class.

The Complaint alleges that not all class members were owed a Reward Recognition Trip. (Doc. 2 – ¶¶ 32, 78)  Yet, Lilly multiplies the number of total eligible FDEs) by the $5,000 value of the Reward Recognition Trip solely because the named representative Plaintiff claims to have had earned that incentive. (Doc 1 – Pgs 4-5; Doc 16 – Pg 2).  In her Motion to Remand, Plaintiff asserted that the amount in controversy for the Reward Recognition Trip was limited to only the top selling FDEs and, therefore, most likely resulted in a total value "under $50,000 for the whole class."  (Doc 13 – Pg 8).   By attempting to include the value of the Reward Recognition Trip in the damages for all alleged FDEs, including some of which will not meet the class definition, Lilly calculates an additional $4,855,000 (971 x $5,000) in alleged damages for amount in controversy purposes.  (Doc 16 – Pg 16).

On April 24, 2014, the District Court issued an Order remanding the action to Florida State Court (Doc 25) finding:

4

1.    Lilly failed to identify the number of employees who fit the class definition set forth in the Class Action Complaint.    Specifically, Lilly's calculations "resulted in a number of employees beyond the scope of the defined Class in Plaintiff's Complaint."  (Doc 25 – Pgs 3-4).

2.    Lilly failed to submit unambiguous "amount of damages" calculations, especially in light that "it is not likely that each member of the Class has the same exact amount of incentive compensation owed to them as does Plaintiff."  (Doc 25 – Pg 4).

3.    Lilly had two chances to provide the Court with evidence to show the amount in controversy exceeded five million dollars, but "provided no evidence that supports an unambiguous amount in controversy pertaining to the defined Class."  (Doc 25 – Pgs 4-5).

Based on these findings, the District Court correctly concluded that there was too much "conjecture" and "speculation" surrounding the amount in controversy and that, as a result, Lilly failed to "show by preponderance of the evidence that the amount in controversy for removal under CAFA has been met." (Doc 25 – Pgs 3-4).

This Court reviews *de novo* a district court's decision to remand a CAFA case to state court for lack of subject matter jurisdiction.  Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 751 (11th Cir. 2010)

5

## SUMMARY OF ARGUMENT

The federal district court correctly held that Lilly failed to establish by a preponderance of the evidence that the amount in controversy exceeded $5 million dollars.  The lower court recognized the speculative nature of Lilly's calculations as to the number of class members and the amount of damages.  Because both facts are crucial to the amount in controversy, Lilly has failed to establish the necessary requirements for federal court jurisdiction.

In its amount in controversy calculations, Lilly elected to use the total number of FDEs it employed rather than use the number of FDEs who did not receive incentive compensation payments that were earned based on the achievement of their target goals.  Because the Complaint defined the Class as all FDEs who "did not receive" their incentives, Lilly's failure to determine how many of its FDEs fall "within the definition of the proposed class" is fatal to its attempt to show that the amount in controversy exceeds CAFA's $5 million dollar requirement.  Std. Fire Ins. Co. v. Knowles, 133 S.Ct. 1345, 1348, 185 L.Ed.2d 439 (2013) (CAFA "tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of the proposed class and determine whether the resulting sum exceeds $5 million.").  Without evidence as to the number of FDEs who fall within the defined

Class, any calculations provided by Lilly are purely guesswork.  For this reason alone, the district court was correct in ordering remand.

Lilly's measure of the amount of damages is also speculative.  To show that the amount in controversy exceeds $5 million dollars, Lilly improperly sought to extrapolate the alleged value of the Reward Recognition Trip ($5,000) withheld from the named Plaintiff to all of its FDEs.  However, the Complaint clearly rebuts Lilly's assumption and alleges that only a small portion of FDEs who earned a Trip are entitled to the value thereof.  (Doc 2 – ¶32) (alleging that some of the FDEs who earned the Trip were paid the value of the Trip by Lilly).  Therefore, Lilly's extrapolation of the Reward Recognition Trip was speculative at best.

In addition to the improper Reward Recognition Trip calculations, Lilly also provided self-serving assumptions regarding the additional compensation payments to prove that the amount in controversy exceeds $5 million dollars.  Specifically, Lilly failed to take into account the pro-rated amounts of incentive compensation when calculating the amount in controversy, despite the Complaint's allegations that she was only entitled to pro-rated incentive compensation payments.  Because Lilly presented evidence as to the termination dates, it clearly had the necessary facts to calculate the pro-rated damages alleged by Plaintiff; but chose not to do so.

Lilly's misstatements and assumptions resulted in calculations based on a number of employees beyond the scope of the defined Class in Plaintiff's

Complaint, and led the district court to hold that Lilly had left the district court to guess as "to what each [class member] was entitled to receive as compensation and did not." (Doc 25 – Pg 4). Because Lilly failed to establish by a preponderance of the evidence that the amount in controversy satisfied CAFA's $5 million dollar requirement, the district court was correct in ordering remand.

## **ARGUMENT**

This Court generally reviews *de novo* a district court's decision to remand a CAFA case to state court for lack of subject matter jurisdiction. Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 751 (11th Cir. 2010 ). However, district courts are being presented with mixed questions of law and fact when considering evidence outside of the Complaint by removing parties and this Court should give deference to such aspects of a district court's conclusions under such circumstances. "Federal courts are courts of limited jurisdiction." Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994). Against this legal backdrop, in actions removed from state court to federal court, federal courts strictly construe removal statues, resolve all doubts in favor of remand, and place the burden of proving jurisdiction on the removing defendant. Miedema v. Maytage Corp., 450 F. 3d 1322, 1328-30 (11th Cir. 2006).

These principles were established long before the enactment of CAFA, and this Circuit has made clear that, notwithstanding CAFA's expansion of diversity

jurisdiction over class actions, these principles remain undisturbed. Id.; see also Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 752 (11th Cir. 2010) ("CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction." (quoting Evans v. Walter Indus., Inc., 449 F.3d 1159, 1164 (11th Cir. 2006)). In a case such as here, where a plaintiff has not plead a specific amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds CAFA's jurisdictional minimum. Pretka, 608 F.3d at 752 (collecting cases).

Plaintiff's Complaint contains no allegations indicating the total amount of damages sought, nor any unambiguous statement that would be sufficient to establish that Plaintiff's claims potentially exceed $5 million dollars in aggregate. Therefore, it was Lilly's burden to present evidence which proved by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement.

The district court correctly ordered remand finding Lilly had "two chances to provide this Court with the evidence to show that the amount of controversy exceeds five million dollars" and that Lilly "failed in both attempts to show by preponderance of the evidence that the amount in controversy for removal under CAFA has been met." (Doc 25 – Pg 4).

9

In light of the view that a court should resolve all doubts in favor of remand, remand is proper for three reasons.  First, Lilly is not permitted to include the total number of FDE employees in its amount in controversy calculations, since Plaintiff's class definition only includes those employees who "did not receive" their incentive payments at the end of their employment period.  Second, the determination that Lilly's damages calculations were speculative was within the clearly defined guidance of this Circuit's precedent.  Third, the district court's rationale supporting its decision to remand does not require defendants to concede liability or establish the exact amount of controversy.

## I.    LILLY FAILED TO ESTABLISH BY A PREPONDERANCE OF THE EVIDENCE THAT THE AMOUNT IN CONTROVERSY EXCEEDS THE JURISDICTIONAL MINIMUM

In essence, Lilly asks this Court to rely upon its a figure that is wholly speculative.  It has provided no meaningful evidence of the number of putative class members and an extraordinarily speculative amount of damages.  "Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirements."  Pretka, 608 F.3d at 752 (11th Cir. 2010) (quotation omitted).  Here, the district court correctly ordered remand noting:

> Defendants have provided this Court with vague and ambiguous evidence of a Class that Defendants have decided to make on their

own accord.  The evidence Defendants have provided leaves this Court to guess at not only the true number of the Class, but also to what each member was entitled to receive as compensation and did not.  Without this evidence, this Court cannot determine that the amount in controversy is over five million dollars.  *See Pretka* 608 F.3d at 769.  Defendants have had two chances to provide this Court with the evidence to show that the amount of controversy exceeds five million dollars.  Defendants have failed in both attempts to show by preponderance of the evidence that the amount in controversy for removal under CAFA has been met.

(Do. 25 – Pg 4).

Simply stated, Lilly's Removal of Plaintiff's Class Action Complaint from Florida state court is based solely on self-serving assumptions and speculation regarding the number of class members, and the amount of damages.

## A.    The Trial Court Correctly Ordered Remand Because Lilly's Class-Size Evidence Is Speculative And Fails To Include The Number Of FDEs Who Fall Within The Definition Of The Proposed Class

The first hurdle Lilly fails to overcome in establishing CAFA's amount in controversy requirement is establishing by a preponderance of the evidence the number of Fixed-Duration Employees (FDEs) who fit the class definition.  CAFA "tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person <u>who falls within the definition of the proposed class</u> and determine whether the resulting sum exceeds $5 million." <u>Std. Fire Ins. Co. v. Knowles</u>, 133 S.Ct. 1345, 1348, 185 L.Ed.2d 439 (2013).  Without evidence as to the number of FDEs who fall within the class definition, any extrapolation as

11

to the amount in controversy is pure guesswork by Lilly. The record in this case details Lilly's attempts to manufacture federal jurisdiction where none exists.

For example, in Lilly's Notice of Removal, Lilly originally argued that there were 1,181 FDEs employed by Lilly during the class period. (Doc 1 – Pg 5). Lilly used this number when making its initial amount in controversy calculations. (Doc 1 – Pg 5). After Plaintiff filed her Motion to Remand on grounds that Lilly's calculations were speculative, Lilly attempted to offer "supplemental" evidence as to the number of class members. Specifically, in its Response to Plaintiff's Motion to Remand, Lilly admitted that 210 of the 1,181 FDEs were still employed by Lilly and therefore could not be class members. (Doc 16 – Pg 14). Likewise, another 122 FDEs ended their employment term on the corresponding incentive end date and would also not meet the class definition. (Doc 16 – Pg 14).

According to Lilly's "supplemental" calculations, there are 849 FDEs who were terminated on dates "occurring before the completion of the time period used for calculating [incentives]."[1] This is part of the calculation needed to determine the amount in controversy. However, Lilly makes the fatal mistake of failing to give any indication of the number of the remaining 849 FDEs who <u>did not receive</u>

---

[1] Lilly argues that there are 971 potential class members when you add the addition 122 FDEs who would not be entitled to incentive compensation, but still nonetheless may be entitled to the value of the Reward Recognition Trip. (Doc 16 – Pg 8). For the reasons discussed in section I (B)(1) below, this argument fails.

the incentives that were earned based on the achievement of their target goals. Those FDEs that were terminated before their goal was attained were not eligible for the incentive and would therefore not fall within the class definition. Other FDEs may have been paid their incentives despite their termination. Lilly has this information in its exclusive control and, if that information supported $5 million dollars in controversy, such information presumably would have been provided.

In comparing this Court's decision in Miedema, 450 F.3d 1322, to the case at bar, the district court stated:

> Likewise, here, Plaintiff stated the defined Class within her Complaint which Defendant should have relied on. Plaintiff made clear that the exact number of the Class is uncertain, but limited it to only those FDEs that *__did not__* receive their promised compensation. It seems plausible to this Court that Defendants would have access to their own employment records to establish by preponderance of the evidence exactly how many members of the class exist. Yet, Defendants failed to identify a specific number of class participants. Had Defendants provided this Court and Plaintiff with the specific number of the defined Class, the amount in which approximately each member was entitled should then be apparent and not speculative.

(Doc 25 – Pg 3) (emphasis in original).

Indeed, this Court's decision in Miedema is instructive. 450 F.3d 1322 (affirming district court's grant of remand). In Miedema, the plaintiff filed a post-removal amended complaint which amended the class definition. Id. at 1331. There, the original complaint identified the class as "[a]ll purchasers of Maytag ranges/ovens, in the State of Florida," while the amended class definition identified

13

the putative class as "all purchasers of Maytag ranges/ovens, in the State of Florida, *which contain the allegedly defective motorized door latch assembly*." Id. The district court held that because Maytag failed to confirm the number of units which contained the defective motorized door latch assembly, the court was "uncertain about the amount in controversy." Miedema v. Maytag Corp., 2006 WL 5516855, *6 (S.D. Fla. 2006). Although this Court decided not to use the amended class definition on appeal, on grounds that "jurisdictional facts are assessed on the basis of plaintiff's complaint as of the time of removal," the Court recognized that the amended class definition would have supported the district court's reasoning had it been included in the complaint before removal. Miedema, 450 F.3d at 1331. Thus, the Court recognized the importance of the class definition at the time of removal in determining the amount in controversy.

Here, Appellee filed only one Complaint which defines the Putative Class as all FDEs "who, during the class period, **did not receive** [certain incentive payments] as a result of their scheduled termination date occurring before the completion of the time period used for calculating said amounts."  Like the amended class definition in Miedema which included all Florida purchasers of units that had the defective motorized door latch assembly, the Plaintiff's Complaint here defines the Class as all FDEs who did not receive incentive payments as a result of their scheduled termination date.  This clear and

14

unambiguous requirement must be taken into account when calculating the number of FDEs who fall within the class definition. Accordingly, Lilly's failure to provide any evidence of the number of FDEs who were eligible for, but did not receive the incentive payments in dispute, constitutes pure speculation which is fatal to their amount in controversy calculations. See Miedema, 450 F.3d at 1330-31.

Like the district court in this matter, other federal courts have held that a defendant's failure to adhere to the class definition when calculating the amount in controversy is exactly the sort of speculation and conjecture which may not form the basis of federal jurisdiction under CAFA. See Caufield v. EMC Mortgage Corp., 803 F. Supp. 2d 519 (S.D. W.V. 2011) (granting remand on basis that defendant improperly calculated the amount in controversy by using the amount of loans defendant services, and not the amount of loans that defendant services in the same manner as the named plaintiff's loan); Hewitt v. Gerber Products Co., 2012 WL 5410753, *8 (W.D. Ark. 2012) (remanding case where defendant provided calculation based on total number of persons employed by defendant, as opposed to limiting the calculation to total number of class members); Krivonyak v. Fifth Third Bank, 2009 WL 2392092, *5 (S.D. W.V. 2009) (remanding case on basis that defendants' calculations were speculative, given that they assumed that all consumer borrowers were a part of the class, instead of only those identified in the

Complaint as being charged late fees and were not credit payments); <u>Myers v. BJ's Wholesale Club, Inc.</u>, 2014 WL 1923277, *3 (E.D. Pa. May 14, 2014) (remanding case on grounds that "Defendant's assumption that every transaction involving a discount, coupon or rebate will qualify for class membership falls short of satisfying defendant's burden")

In <u>Caufield</u>, the court determined that defendant's assumption that all of the loans in its possession were serviced in the same defective manner as the plaintiff's loan was pure speculation. 803 F. Supp. 2d at 528. In fact, the court stated the "[m]erely multiplying the number of [loans] that the defendant has serviced by the amount the named plaintiff may recover cannot constitute a sufficient basis for removal jurisdiction under CAFA." <u>Id.</u> Likewise, in <u>Hewitt</u>, another employee based class action, the court held that the defendant did not meet its burden in proving the amount in controversy, and provided:

> Gerber provides a calculation of damages based on a proposed class of 650 members, which is the total number of persons employed at the Facility, as opposed to limiting the calculation to the total number of potential class members. In calculating the estimate value of Plaintiff's claims, Gerber averred, "Defendants [sic] are requesting four hours per week of overtime pay for 650 employees for a three-year period." Gerber's calculation rests on the speculative assumptions that every single employee at its Facility was denied four hours of overtime pay every week, earned the same wage rate, and received the maximum amount of vacation each year. Gerber offers no evidence regarding the size of the class or the number of former employees who are potential class members.

2012 WL 5410753 at *8.  Like the defendants in <u>Caufield</u> and <u>Hewitt</u>, Lilly has failed to provide evidence as to the true number of FDEs that fit the class definition.    Instead, Lilly offers self-serving calculations which rest on the speculative assumption that every single FDE employed by Lilly qualified for all incentives and were all denied incentive compensation during their last payout period.

Lilly argues in this appeal that the Complaint puts all FDEs potential claims at issue and "Lilly need do nothing more."   (Appellant Initial Brief – Pg 12).  Specifically, Lilly takes the position that all FDEs who were terminated on a date other than a bi-annual/quarterly payout end date are part of the class regardless of whether any were denied incentive payments.  Lilly also argues that because the Plaintiff alleged that her claims are common and typical of the class, Lilly can extrapolate the amount of damages suffered by the named representative who was a top tier sales representative to all FDEs.

However, as master to her Complaint, Plaintiff/Appellee defined the Class.  A simple review of the Complaint shows that the class definition is restricted to only those FDEs who <u>did not receive</u> the incentive compensation payments that had already been accomplished as a result of their scheduled termination date.[2]

---

[2] <u>See</u> Doc 2 ¶ 5 ("Plaintiff brings this suit … to recover all damages resulting from Lilly's <u>failure to pay</u>"); ¶ 36 (defining the class as all FDEs "who during the class

17

Lilly's assertion that the district court erred in not allowing Lilly to count all FDEs in its calculations falls flat since the operative definition of the Class requires calculations based on the number of FDEs who were eligible for but did not receive their incentive compensation.  As the district court correctly concluded, Lilly's "calculation resulted in a number of employees beyond the scope of the defined Class in Plaintiff's Complaint." (Doc 25 – Pg 4).  Accordingly, Lilly has failed to add up "the value of the claim of each person who falls within the definition of the proposed class." See Std. Fire Ins. Co., 133 S.Ct. at 1348.

The district court correctly held that although Lilly is not required to remove all doubt as to its calculations; it cannot rely on speculative numbers. (Doc 25 – Pg 4).  Lilly's self-serving assumptions regarding the number of class members dictates that jurisdiction lies in Florida state court, since it is unclear from Plaintiff's Complaint and Lilly's Notice of Removal the number of FDEs who fall within the class definition.  Without evidence establishing any rational basis to approximate the number of class members, it is impossible to determine whether the amount in controversy exceeds $5 million dollars.   Accordingly, the district court was correct in ordering remand since Lilly has failed to meet its burden in establishing CAFA's amount in controversy requirement.

---

period, did not receive [incentive compensation] payments); ¶ 49 ("LILLY breached its [contract] with Plaintiff and the Class by failing to pay the pro-rated amounts owed to them").

### B.    The Trial Court Correctly Ordered Remand Because The Amount Of Damages Proffered By Lilly Is Speculative

In addition to failing to identify the number of FDEs who fall within the class definition with which the amount in controversy calculations must be based, Lilly also fails to appropriately calculate the amount of damages the Plaintiff's claims put at issue.  First, Lilly improperly seeks to extrapolate the alleged value of the Reward Recognition Trip ($5,000.00) withheld from Plaintiff among every single one of its FDEs.  This improper leap in logic alone accounts for almost $5 million dollars of damages (971 x $5,000 = $4,855,000).  Second, Lilly makes several self-serving assumptions regarding the additional incentive compensation payments at issue in order to increase the amount in controversy.  These misleading assertions and assumptions left the district court to guess as "to what each [class member] was entitled to receive as compensation and did not."  (Doc 25 – Pg 4).

### 1.    Lilly's Attempt to Extrapolate the Value of the Reward Recognition Trip Among all FDEs was Improper

The Complaint is clear.  FDEs are basically drug sales representatives that are compensated for achieving sales goals.  One of the ways that Lilly incentivized its FDEs was to award a "Reward Recognition Trip" to an exotic destination.  However, qualification for the Reward Recognition Trip is limited to those salespeople who reach only the highest levels.  (Doc. 21, Pg. 4).  Dudley was

awarded a Reward Recognition Trip by Lilly based on her individual performance in reaching.  (Doc 2 – ¶ 24).  Dudley did not receive the Trip or the value thereof, which Plaintiff alleges to be $5,000.00.  (Doc 2 – ¶32).  Importantly, Dudley alleges that some of the individuals who earned the Trip, but did not actually attend the trip, "were paid $5,000.00 for the [Trip]."  Id.  Thus, only those few FDEs who were (1) awarded the trip by Lilly; (2) did not take the trip; and (3) did not receive the $5,000 payment as compensation for the trip fall within the class definition.  Because the Reward Recognition Trips were only for the highest achievers, it is reasonable to assume that the majority of FDEs never even qualified for this incentive.

Despite the Complaint's unambiguous allegations and class definition, and despite the fact that Lilly knows that these trips are limited to only its highest achievers, Lilly attempted to artificially inflate the amount in controversy by extrapolating the value of the Reward Recognition Trip among every single FDEs identified in its supplemental evidence.  Specifically, Lilly seeks to add $4,855,000 to the amount in controversy by improperly multiplying the $5,000 value of the Trip to every FDE.

Ironically, Lilly took the time to present evidence regarding every FDEs' termination date, but decided not to disclose how many FDEs were awarded the Reward Recognition Trip.  See (Doc 16-2, ¶¶ 6-10).  Lilly's failure to present any

20

evidence regarding the number of FDEs who (1) earned a Reward Recognition Trip and (2) did not receive the Trip or the value thereof is fatal to its damages calculations.  Had Lilly identified the number of FDEs who were awarded the trip and did not receive the trip or the value thereof, it would have been able to include this number in the amount in controversy.  Appellee has no obligation to rebut Lilly's bare assertions.  See <u>Bartnikowski v. NVR, Inc.</u>, 307 Fed. Appx. 730, 738 (4th Cir. 2009) (holding that a plaintiff is under no obligation to rebut a defendant's bare assertions which are the result of strategic guesswork and not supported in the record).

This Court in <u>Miedema</u> chose to resolve similar uncertainties in favor of remand.  450 F.3d 1322.  In <u>Miedema</u>, Maytag's notice of removal included an affidavit of one of its information analysts that included figures not based on actual sales data, but merely a guess extrapolated from the number of product registrations from Florida consumers.  <u>Id.</u> at 1332.  There, the Court found that "great uncertainty" remained about the amount in controversy and that such uncertainty needed to be resolved in favor of remand.  <u>Id.</u> (internal quotations omitted).

Lilly's Reward Recognition Trip assumptions are even more speculative than Maytag's extrapolations in <u>Miedema</u>.  In <u>Miedema</u>, Maytag at least had data on the number of product registrations in Florida and an estimate of nationwide

21

registration rates to anchors its estimate.  Here, by contrast, Lilly only presented evidence as to the total number of FDEs employed by Lilly, and failed to present any evidence whatsoever regarding the <u>actual</u> number of FDEs who earned but did not receive the Reward Recognition Trip.  Without any actual data, evidence or proof, Lilly improperly extrapolates its assumption to make it appear as if CAFA's amount in controversy requirement has been satisfied.  In sum, Lilly's Reward Recognition Trip valuation is speculative at best and a blatant attempt to mislead the Court at worst.  Accordingly, the district court was correct in deciding that Lilly failed to meet the $5 million minimum amount in controversy required for federal jurisdiction.

### 2.    Lilly's Speculative Valuations Regarding Incentive Payment Damages is Insufficient to Support CAFA Jurisdiction

Like its improper Reward Trip calculations, Lilly also decided to improperly assume that every FDE was eligible for, but did not receive, any of the incentive targets at issue in order to demonstrate an inflated amount of damages.  When such obvious speculation was challenged, Lilly continued to present alternative calculations that used a range of potential recovery based on unsupported assumptions.  Ultimately, the district court correctly held that it could not rely on this type of conjecture, speculation and uncertainty when determining jurisdiction. (Doc 25 – Pgs 4-5); <u>see</u> <u>also</u> <u>Burns v. Windsor Ins. Co.</u>, 31 F.3d 1092, 1095 (11th

22

Cir. 1994) ("[R]emoval statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.").

Lilly's original damages calculation in the amount of $9,600 per FDE is completely speculative for three reasons. First and foremost, Lilly has failed to determine how many FDEs did not receive their incentive compensation and therefore meet the class definition. Second, the Reward Recognition Trip's value ($5,000) cannot be extrapolated for amount in controversy purposes for the reasons stated above. Third, the Complaint alleges that she is entitled to a pro-rated portion of the $4,600 "VOB" sales incentive based on the percent of the quarter she worked, not the full $4,600. (Doc. 2 – ¶ 30). For example, if her employment term ended 75% of the way through the incentive period, Plaintiff would be due 75% of the $4,600 sales incentive earned. Class members that only worked 10% of the incentive period would receive a similar compensation based upon the incentive award earned. Therefore, Lilly's use of the entire $4,600 is wholly inappropriate, since Plaintiff herself is not even seeking the full $4,600.

In order to reach the amount in controversy, Lilly's damages calculations have to contemplate that every single FDE has suffered damages in the full amount of incentive targets, when in fact, the Complaint only seeks pro-rated incentive payments for those FDEs that qualified before their termination. (Doc 2 – ¶29) ("Plaintiff Dudley and the FDE class she seeks to represent are entitled to the **pro-**

**rated** amount of the incentives earned prior to their termination date.").  Moreover, Lilly chose to present evidence as to every FDEs termination date, and therefore had the ability to approximate the correct amount of pro-rated damages.  Lilly chose not to do so.  This consideration alone proves fatal to Lilly's inflated damages calculation.

More importantly, even assuming there were 849 FDEs who did not receive their incentive compensation, the maximum amount in controversy is \$3,254,500 when pro-rated (849 x \$3,833.33 [5/6\textsuperscript{th} prorated amount of \$4,600]), or \$3,905,400 if not pro-rated (849 x \$4,600).  These numbers demonstrate why Lilly was required to include other speculative calculations to reach its \$5 million dollar amount in controversy.

Lilly's alternative calculations likewise fail for similar reasons.  For example, Lilly asserts that the "mean" amounts of quarterly and biannual incentive targets of all FDEs during the period equal \$7,187.50.  Like its first calculations, Lilly fails to pro-rate these amounts, even if by the same pro-rated percentage Plaintiff would be entitled to.  Furthermore, even if this amount was accepted, it is impossible to state the amount in controversy since Lilly failed to identify the number of FDEs who earned this incentive but did not receive it, as required by the class definition.  Although Lilly seeks to multiply the \$7,187.50 amount by 971 (a speculative number of class members), without more evidence, any calculation by

Lilly would be pure guesswork aimed at creating jurisdiction where none exists. Because the class is defined as only those FDEs who were terminated prior to the end of their incentive payout periods, Lilly's damages calculations that are based on the "mean" amount of non-prorated incentive compensation targets for <u>all</u> FDEs regardless of whether their termination date fell at the end of the period or not, is obviously flawed and must fail.

Lilly had two chances to prove by a preponderance of the evidence that the amount in controversy for removal under CAFA has been met and failed both times. As the district court provided:

> Defendants attempted to provide evidence to demonstrate that the "minimum amount in controversy per potential class member is between $9,600 and $12,187.50." Defendants' argument and supporting evidence is irrelevant and misses the point of the CAFA requirements. Defendants have provided no evidence that supports an unambiguous amount in controversy pertaining to the defined Class.

(Doc 25 – Pgs 4-5).

Because it is unclear whether there is $500,000 or $5,000,000 of damages at issue, the district court correctly ordered remand.

## II. THE TRIAL COURT'S RATIONALE DOES NOT REQUIRE DEFENDANTS TO CONCEDE LIABILITY OR CALCULATE THE EXACT AMOUNT OF CONTROVERSY

Despite Lilly's contention to the contrary, the district court's reasoning for remand does not undermine well-established CAFA jurisprudence or require Lilly to "concede liability." Instead, the district court's decision to remand was based on

25

the well-established standard that the removing defendant must prove by a preponderance of the evidence that the amount in controversy has been met and that federal courts should resolve all doubts in favor of remand.  See Pretka, 608 F.3d at 752; Miedema, 450 F.3d at 1328-30.  According to Lilly, the district court's order to remand requires a "confession of liability" in order to satisfy CAFA's amount in controversy requirements.  Specifically, Lilly argues that it was required to determine "the precise relationship between performance and incentive payment criteria – that is, provided detailed, sales-record-by-sales-record proof … for each of almost one thousand former employees.  (Appellant Brief – Pg 29).  Nothing could be further from the truth.

Here, Lilly simply failed to provide any evidence of the number of "class members," which is defined by CAFA as "persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action."  28 U.S.C. § 1332(d)(1)(D).  Instead of relying on the Class defined in the Complaint, Lilly elected to go down the path of self-serving assumptions, based solely on the total number of FDEs, some of which will definitely fall outside of the defined Class.  Accordingly, the district court held that Lilly simply failed to establish the amount in controversy by a preponderance of the evidence.  (Doc 25 – Pgs 3-4).  To be sure, the district court stated that had Lilly followed the defined Class and provided evidence based on the criteria therein, the amount in controversy would have been

"apparent and not speculative." Id. Accordingly, the district court's decision to remand does nothing to disturb well-established CAFA jurisprudence, and in fact, demonstrates why CAFA requires cases like this one to be remanded back to state court.

For support, Lilly cites Raskas v. Johnson & Johnson, 719 F.3d 884 (8th Cir. 2013), which is distinguishable. In Raskas, the court reversed a remand order which dealt with three class actions involving three drug manufacturers, and found that the amount in controversy was satisfied by a preponderance of the evidence where each company produced concrete evidence as to total sales in Missouri ($14 million, $3.3 million, and $19 million respectively), in conjunction with punitive damages. Id. at 887-88. Unlike the defendants in Raskas, Lilly failed to produce any evidence regarding the approximate number of class members or the amount of damages.

Lilly also argues that the district court's order runs afoul of CAFA and requests that all uncertainties be resolved in favor of federal jurisdiction. (Appellant Brief – Pg. 31); but see Miedema, 450 F.3d at 1328-30 (holding that in actions removed from state court to federal court, federal courts resolve all doubts in favor of remand). These same arguments were made by the defendant in Bartnikowski v. NVR, Inc., 307 Fed. Appx. 730 (4th Cir. 2009). There, the Court rejected such arguments and stated:

> While NVR suggests that CAFA mandates that we resolve any such uncertainties in favor of federal jurisdiction, the longstanding tradition of strictly construing removal jurisdiction suggests otherwise. *See, e.g., Strawn,* 530 F.3d at 297 (rejecting the argument that CAFA's legislative history demonstrates that the statute intended to flip the presumption that doubts about jurisdiction are resolved in favor of remand to state court); *Miedema,* 450 F.3d at 1328-29 (same).
>
> We reach our decision to affirm the district court not unmindful of the difficulty that CAFA defendants face in demonstrating that the amount in controversy is met when plaintiffs have left their damages unspecified. Plaintiffs may well use their pleadings in state court tactically, leaving damages unspecified to block removal without foreclosing an ultimate recovery of more than the federal jurisdictional minimum. *See Lowdermilk v. U.S. Bank Nat'l Assoc.,* 479 F.3d 994, 1002 (9th Cir.2007). We are reassured, however, by the fact that a CAFA defendant who cannot meet his burden for removal at the early stages of litigation may still have recourse to the federal courts later, as Congress has eliminated the one-year time limit on CAFA removal actions.[15] *See* 28 U.S.C.A. § 1453(b) (West 2008); *Lowdermilk,* 479 F.3d at 1002-03.

Id. at 738-39.

Finally, Lilly continually cites Pretka to support its position. 608 F.3d 744. However, in order to do so, Lilly must equate its evidence that contains assumptions and speculation with the evidence of actual prior damages presented in Pretka. Because assumptions are not facts, and Lilly failed to take into account the defined Class, Pretka is highly distinguishable. Id. at 770 (involved a notice of removal which included a declaration that asserted that defendant "had collected more than $5 million in condominium unit purchase deposits."). Unfortunately for Lilly, its failure to present evidence as to the number of FDEs who fall within the

class definition along with its assumptions of damages simply preclude it from magically turning speculation into fact.

## **CONCLUSION**

For the foregoing reasons, the Court should affirm the April 24, 2014 Order granting Appellee's Motion to Remand so that the parties can litigate this matter in her chosen forum.

Dated July 29, 2014.                    Respectfully Submitted,

/s/ Brian W. Warwick
Brian William Warwick
Janet Varnell
Varnell & Warwick, P.A.
P.O. Box 1870
Lady Lake, FL 32158
bwarwick@varnellandwarwick.com
jvarnell@varnellandwarwick.com

29

## CERTIFICATE OF COMPLIANCE

On July 29, 2014, I hereby certify,

    1.    This brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B) because:

    ☑ this brief contains 6,906 words according to Microsoft Word 2010 word count, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii)

    2.    This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because:

    ☑ this brief has been prepared in a proportionally spaced typeface using *Microsoft Word 2010* in 14-point Times New Roman.

/s/ Brian W. Warwick
Brian William Warwick
Janet Varnell
VARNELL & WARWICK, P.A.
P.O. Box 1870
Lady Lake, FL 32158
bwarwick@varnellandwarwick.com
jvarnell@varnellandwarwick.com

30

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 29, 2014, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system. I also further certify that a copy of the foregoing document was sent by United States Mail to the following:

Stephen M. Brooks
Nelson Mullins Riley & Scarborough LLP
201 17th Street
Suite 1700
Atlanta, GA 30363
stephen.brooks@nelsonmullins.com

Ellen E. Boshkoff
D. Lucetta Pope
Thomas W. Carroll
Faegre Baker Daniels LLP
300 North Meridian Street
Suite 2700
Indianapolis, IN 46204-1750
Ellen.boshkoff@FaegreBD.com
Lucetta.pope@FaegreBD.com
Thomas.carroll@FaegreBD.com

*Attorneys for Appellants*
*Eli Lilly and Company and Lilly USA, LLC*

/s/ Brian W. Warwick
Brian W. Warwick
Janet R. Varnell
VARNELL & WARWICK, P.A.
P.O. Box 1870
Lady Lake, FL 32158
bwarwick@varnellandwarwick.com
jvarnell@varnellandwarwick.com

31